**525 FULTON STREET HOLDING CORP., Plaintiff,**

v.

**MISSION NATIONAL INSURANCE COMPANY, Defendant.**

No. 83 Civ. 8229 (KTD).

United States District Court, S.D. New York.

April 26, 1985.

Gerard I. Castelli, Tuckahoe, N.Y., for plaintiff.

White, Fleischner & Fino, New York City, for defendant; Eric B. Schoenfeld, New York City, of counsel.

**KEVIN THOMAS DUFFY, District Judge:**

From April 11, 1981 through September 23, 1982—a span of seventeen months—Victor, Steven, and Charles Chera filed for nine insurance losses on which they collected nearly two million dollars. At least three of these claims stemmed from water damage caused by allegedly faulty plumbing at various premises they owned. The present case arises from the tenth insurance claim filed by the Cheras in recent months, and at least the fourth resulting from allegedly faulty plumbing.

525 Fulton Street Holding Corporation, the plaintiff, is owned by Victor, Steven, and Charles Chera. This case arose from an insurance contract dispute revolving around an alleged loss—caused by flooding—at plaintiff's premises, 525 Fulton Street, Brooklyn, New York on March 6, 1983 for which plaintiff seeks more than $600,000 in insurance proceeds. The insurer, Mission Insurance Company, began its routine inquiry into the case of this flood by sending an independent investigator to the premises. His report shed serious doubt on the validity of the insured's claim and concluded that the loss may not have been caused by an accident. A follow-up investigation concluded that the fracture of the water valve stem in question was caused by deliberate impacting blows.

In light of these reports, Mission continued its investigation and sought, thru interrogatories, to acquire information about the plaintiff's affiliates, specifically, any prior insurance losses they had claimed.

This line of inquiry was understandable and justified; Mission wanted to ascertain whether the Chera brothers had a pattern of filing false insurance claims on other premises they owned. This historical information was clearly relevant to the most recent claim, particularly in light of the initial reports filed by two independent investigators which pointed to the possibility of foul play.

Over two years have elapsed since the claim was recorded, and the Cheras have still not supplied Mission with the requested information. This non-cooperation by the Cheras has continued despite a ruling by Magistrate Michael Dolinger on April 9, 1984 that this information was relevant to Mission's investigation, and that "plaintiff's resistance to answering the interrogatory is fundamentally misconceived." Following this ruling, on May 24, 1984, the Cheras submitted a supplementary answer to the relevant interrogatory which listed the affiliates, their insurance carriers and dates of policies, and the loss history of these corporations. Four out of the eight prior losses listed by the plaintiff in this supplementary answer contain incorrect policy numbers. In addition to this, Mission has allegedly discovered another loss that was not mentioned by the Cheras in their supplementary answer.

The insurance policy governing this dispute contains a "cooperation clause" which provides that the insured, "as often as may be reasonably required, shall ... submit to examination under oath." In *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.,* 518 F.2d 671, 674 (2d Cir.1975), the court observed that the purpose of the cooperation clause "is to enable the insurer to obtain all knowledge and facts concerning the cause of the ... loss ... to protect itself from fraudulent and false claims." *Id.* at 674. Although the New York Court of Appeals has held that "a breach which will defeat a recovery cannot be based upon technical or unimportant omissions or defects in the performance by either party," *Porter v. Traders' Ins. Co.,* 164 N.Y. 504, 509, 58 N.E. 641, 642–43 (1900), a "willful and

74

fraudulent withholding of information" will defeat recovery. *Happy Hank Auction Co. v. American Eage Fire Insurance Co.,* 1 N.Y.2d 534, 539, 154 N.Y.S.2d 870, 873, 136 N.E.2d 842, 845 (1956).

Mission has waited for over two years for this information relating to the Cheras' prior claims. Plaintiff's delay is inexcusable. Furthermore, in response to Magistrate Dolinger's ruling issued over one year ago ordering disclosure of this information, the Cheras provided Mission with false and misleading data. Since then, they have made no effort to correct this misinformation.

The plaintiff does not contest that the information it provided in response to Magistrate Dolinger's ruling was incorrect and misleading; rather, plaintiff contends that this court should not grant summary judgment on Mission's motion because, in contrast with prior cases where summary judgment was granted, the Cheras have "not been warned several times that their failure to furnish the information and documents might void their rights under the policy." I conclude, however, that it is not necessary in all cases for insureds to be warned several times that a failure to comply with the terms of their contract will void the policy. In light of their recent experiences, the Cheras are most probably well versed in insurance law. Furthermore, the Cheras may not claim they were not on notice that this information was relevant or that failure to provide it constituted a breach of the contract. Magistrate Dolinger's ruling informed them of this over one year ago. Finally, the Cheras false responses in their supplemental answers following the Magistrate's order cannot be classified as "technical or unimportant omissions or defects." *Porter,* 164 N.Y. at 509, 58 N.E. 641. Rather, the answers constituted a "willful and fraudulent withholding of information." *Happy Hank Auction Co.,* 1 N.Y.2d at 539, 154 N.Y.S.2d 870, 136 N.E.2d 842.

Accordingly, defendant's motion is granted and plaintiff's complaint is dismissed.

SO ORDERED.